**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-00645-RBJ-KMT

ESTATE OF MARVIN L. BOOKER,
REVEREND B.R. BOOKER, SR., and
ROXEY A. WALTON, as Co-Personal Representatives,

      Plaintiffs,

v.

CITY AND COUNTY OF DENVER;
DEPUTY FAUN GOMEZ, individually and in her official capacity;
DEPUTY JAMES GRIMES, individually and in his official capacity;
DEPUTY KYLE SHARP, individually and in his official capacity;
SERGEANT CARRIE RODRIGUEZ, individually and in her official capacity;
DENVER HEALTH AND HOSPITAL AUTHORITY d/b/a DENVER HEALTH MEDICAL
CENTER;
GAIL GEORGE, R.N., individually and in her official capacity; and
SUSAN CRYER, R.N., individually and in her official capacity;

      Defendants.

_____

**PLAINTIFFS' RESPONSE TO MEDICAL DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT FOR LACK OF JURISDICTION AND FAILURE TO STATE A
CLAIM AND ALTERNATIVE MOTION OF DEFENDANTS GEORGE AND CRYER
FOR PARTIAL SUMMARY JUDGMENT ON QUALIFIED IMMUNITY**
_____

      Plaintiffs, Estate of Marvin L. Booker, Reverend B.R. Booker, Sr., and Roxey A.

Walton, as Co-Personal Representatives, by and through their counsel, Darold W.

Killmer, Mari Newman and Lauren Fontana of KILLMER, LANE & NEWMAN, LLP, hereby

submit the following Plaintiffs' Response to Medical Defendants' Motion to Dismiss

Amended Complaint for Lack of Jurisdiction and Failure to State a Claim and Alternative

Motion of Defendants George and Cryer for Partial Summary Judgment on Qualified Immunity.

## INTRODUCTION

Marvin Louis Booker was killed in the City and County of Denver's Van Cise-Simonet Detention Center ("Jail") on July 9, 2010, after five Denver Sheriff's Department Deputies piled on top of him and implemented multiple use of force techniques on him simultaneously.  Am. Compl. ¶¶ 38, 42, 49.  The types of force used on Mr. Booker included a carotid restraint (or "sleeper hold") on his nick, a Taser to his back, handcuffs of his arms behind his back, and nunchucks to restrain his legs and feet.  Am. Compl. ¶¶ 40, 41, 43.  Mr. Booker was 56 years old, weighed only 135 pounds, and stood 5'5" tall.  Am. Compl. ¶ 45.

On October 10, 2011, Plaintiffs filed their Amended Complaint, which added Denver Health Medical Center ("Denver Health"); Gail George, R.N.; and Susan Cryer, R.N. (collectively, "Medical Defendants") as defendants in this action.  The basis for the addition of the Medical Defendants was the City and County of Denver's release of surveillance video of the events on May 9, 2011.  Prior to viewing the surveillance video – the release of which Plaintiffs sought repeatedly between the time of Mr. Booker's death and the eventual release of the video – Plaintiffs had no reason to believe or way to know that they had any viable claims against the Medical Defendants.  Upon viewing the videos, however, Plaintiffs learned for the first time that Defendants George and Cryer witnessed much of the deputies' interaction with Mr. Booker, including the use of the carotid chokehold and the Taser on him, but left the scene during the physical restraint in order to attend to some unrelated paperwork.  Plaintiffs have subsequently

2

learned that Defendant George had to be summoned three times – once by Defendant Rodriguez and twice by Defendant Sharp – before she was willing to provide any medical assistance whatsoever to Mr. Booker.  These actions, taken pursuant to Denver Health's customs, policies, and practices, provide the basis for Plaintiffs' claims against the Medical Defendants.

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1.      Discovery on these issues has not yet been conduct.  Plaintiffs are without sufficient information to admit or deny that both nurses are "non-supervisory."

2.  Admit.

3.  Admit that neither Defendant George nor Defendant Cryer saw the beginning or end of the deputies' struggle with Mr. Booker.  Plaintiffs are without sufficient information to admit or deny that the Defendant George's and Defendant Cryer's view of Mr. Booker was largely obscured by furniture and deputies.  In addition, both Defendant George and Defendant Cryer appear in the surveillance video to adjust their positions to get a better view. *Ex. 1[2] – Surveillance Video* at 3:37:03 – 3:37:30.[3]  During her Internal Affairs interview, Defendant George stated that Defendant Cryer said to her, "I think that's your little black man," referring to Mr. Booker.  *Ex. 2 – George Interview* at 28:14.[4]  Defendant George also stated during the same interview that she recalled thinking that the time that, if the person under the pile of deputies was Mr. Booker, he

---

[1] Plaintiffs' responses are for purposes of Defendants' Motion for Summary Judgment only.

[2] Exhibits 1 through 4, which consist of a video recording and three audio recordings, have been manually filed with the Court contemporaneously with the filing of this Brief, and have been mailed to all parties.

[3] Times for the Surveillance Video are listed using the time-stamp provided by the security camera, displayed at the bottom left-hand corner of the screen.

[4] Times for the Internal Affairs interviews are listed using the audio player's time-stamp.

was a small man, and it was taking them a long time to get him under control.  ***Ex. 2 – George Interview* at 39:39**.  The video of the events appears to demonstrate that the individual Medical Defendants had a clear view of the struggle.

4.   Plaintiffs are without sufficient information to admit or deny.

5.   Discovery on these issues has not yet been conducted.  Plaintiffs are without sufficient information to admit or deny that Defendants George and Cryer both expected that one of them would be summoned to asses Mr. Booker's medical condition as soon as the struggle ended.  Admit that Denver policy provided that medical care would be summoned after the struggle ended, but Plaintiffs are without sufficient information to admit or deny that Defendants George and Cryer expected that policy to be followed.  Plaintiffs affirmatively allege that, had the individual Medical Defendants not intentionally left the scene during the struggle, there would have been no need to "summon" medical care as they would have already been present.

6.   Admit that Defendants George and Cryer left the scene to return to their work duties.  Plaintiffs are without sufficient information to admit or deny that Defendants George and Cryer knew that Mr. Booker's medical condition would be promptly assessed after the struggle ended.  Plaintiffs are without sufficient information to admit or deny that Defendants George and Cryer did not actually perceive any medical need to observe the security struggle until its conclusion, but affirmatively allege that the need for such medical assessment and treatment was objectively obvious.  In addition, Defendant George stated in her Internal Affairs interview that the nurses "prefer not to" stay at the scene of incidents such as the one involving Mr. Booker, "just because of this." ***Ex. 2 – George Interview* at 43:01**.

4

7.  Admit.  In addition, Defendant Sharp stated in his interview that after he and Defendant Grimes noticed that Mr. Booker was not breathing, Defendant Sharp went to get Defendant George.  *Ex. 3 – Sharp Interview* **at 16:30**.  Defendant Sharp further stated that the first time he told Defendant George that Mr. Booker needed medical attention, Defendant George was "nonchalant" in responding, and that Defendant Sharp was only able to convince Defendant George to assess Mr. Booker's medical condition after Defendant Sharp became "aggressive" with Defendant George.  ***Ex. 3 – Sharp Interview* at 16:58**.

8.  Deny.

9.  Admit that the entries noted in the timeline are accurate, but deny that they are complete or provide accurate context.

## STANDARD OF REVIEW

### I.  RULE 12(b)(6) MOTION TO DISMISS

The Federal Rules of Civil Procedure allow a defendant to file a motion to dismiss for "failure to state a claim upon which relief can be granted."  When a defendant files a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).  A complaint will survive a 12(b)(6) motion to dismiss if it contains "enough facts to state a claim that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins v. Oklahoma*, 519 F.3d

1242, 1247 (10th Cir. 2008).  "Technical fact pleading is not required, but the complaint must still provide enough factual allegations for a court to infer potential victory."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2009).

## II.  RULE 12(b)(1) MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) provides for a motion to dismiss for "lack of subject-matter jurisdiction."  Rule 12(b)(1) permits either a facial attack on the complaint's allegations, or a factual attack.  *Paper, Allied Indus., Chemical and Energy Workers Intl. Union v. Continental Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005). When the attack is facial, the Court must accept all factual allegations as true. *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  In contrast, "[w]hen reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations."  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

## III. SUMMARY JUDGMENT

Summary judgment is only appropriate if the record contains no evidence of a genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law. *Woodman v. Runyon*, 132 F.3d 1330, 1337 (10th Cir. 1997). The Tenth Circuit has emphasized that the nonmovant is given "wide birth to prove a factual controversy exists." *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995); *Jeffries v. State of Kansas, Dept. of Social and Rehab. Servs.*, 147 F. 3d 1220, 1228 (10th Cir. 1998). "Where different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment." *Brown v. Parker-Hannifin Corp.,* 746 F.2d 1407, 1411 (10th Cir. 1984).

> The right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases. The advantages of trial before a live jury with live witnesses, and all the possibilities of considering the human factors, should not be eliminated by substituting trial by affidavit and the sterile bareness of summary judgment. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of "even handed justice."

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 176 (1970) (Black, J., concurring) (citing

*Poller v. Columbia Broad.*, 368 U.S. 464, 473 (1962); *see also Fisher v. Shamburg*, 624

F.2d 156, 162 (10th Cir. 1980).[5]

## ARGUMENT

Defendants George and Cryer are not entitled to qualified immunity, as they violated the clearly established rights of Mr. Booker, of which a reasonable person in their position would have known.  Further, Plaintiffs have sufficiently alleged each of their federal claims against the Medical Defendants, and those claims therefore cannot be dismissed as a matter of law.  Plaintiffs have likewise sufficiently pled each of their state law claims against Medical Defendants and complied with the Colorado Governmental Immunity Act ("CGIA"), and those claims should therefore also not be dismissed as a matter of law.

---

[5] Plaintiffs are filing, contemporaneously with this filing, a Motion to Permit Further Discovery Pursuant to Federal Rule of Civil Procedure 56(d).  That Motion fully explains that, because no discovery has been conducted with respect to the Medical Defendants – in fact, Plaintiffs have not even received the Medical Defendants' initial disclosures – the Medical Defendants' Motion for Partial Summary Judgment is premature, and the Court should allow the parties to engage in discovery before ruling on the Motion for Partial Summary Judgment.

I.  **PLAINTIFFS' FEDERAL CLAIMS SHOULD NOT BE DISMISSED AS A MATTER OF LAW.**

Plaintiffs have sufficiently pled all of their federal claims against Defendants George and Cryer, including their claims for a failure to provide medical care and deprivation of life without due process.  Plaintiffs have likewise sufficiently pled their federal claim for failure to train or supervise against Denver Health.  At this stage in the litigation, when Plaintiffs have not conducted any discovery on these issues,[6] or even exchanged initial disclosures, with respect to the Medical Defendants, "[t]echnical fact pleading is not required, but the complaint must still provide enough factual allegations for a court to infer potential victory."  *Bryson*, 534 F.3d at 1286.  Plaintiffs' Amended Complaint contains more than sufficient allegations to meet that requirement.

A.  **Plaintiffs Have Sufficiently Pled a Failure to Provide Medical Care Claim.**

The Supreme Court has long recognized a constitutional claim for deliberate indifference to a prisoner's medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  In *Estelle* the Court held that a prison official violates the Constitutional ban on cruel and unusual punishment if his "deliberate indifference to serious medical needs of prisoners constitutes an unnecessary and wanton infliction of pain."  *Id.* at 104.  For a pretrial detainee such as Mr. Booker, the Due Process Clause of the Fourteenth Amendment proscribes a detention facility's deliberate indifference to an inmate's serious medical needs.  *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).  In order to state a claim for the Medical Defendants' failure to provide medical care and treatment, Plaintiffs must allege, under the objective component of the test, that: (1) Mr. Booker's medical needs were "sufficiently serious" to constitute a deprivation of constitutional dimension, *Farmer*

---

[6] Defendant Denver Health has not filed an Answer to the Amended Complaint.

*v. Brennan*, 511 U.S. 825, 834 (1994), and, under the subjective component of the test, that (2) Defendants George and Cryer knew of and disregarded an excessive risk to Mr. Booker's health and safety. *Id.* at 837. Taking the allegations in the light most favorable to Plaintiffs and drawing every reasonable inference therefrom, as the Court must according to well-established law, Plaintiffs have alleged facts sufficient to support both elements of their claim against Defendants George and Cryer for their deliberate indifference to Mr. Booker's obvious, serious medical needs.

      **1.  Mr. Booker's Injuries were Sufficiently Serious to Meet the Objective Component of the Deliberate Indifference Test.**

The Medical Defendants do not dispute that Mr. Booker's injuries were sufficiently serious to satisfy the first prong of the deliberate indifference test. Given that Mr. Booker *died* as a result of the simultaneous use of various types of force against him, including a carotid neck restraint (or "sleeper hold"), a Taser, nunchucks, and multiple deputies piled on top of him – all of which were directly witnessed by Defendants George and Cryer – there can be no doubt that Mr. Booker's injuries are sufficient to satisfy the objective component of the deliberate indifference test. *See Martinez v. Beggs*, 563 F.2d 1082, 1088-89 (10th Cir. 2009) ("[D]eath was, without doubt, sufficiently serious to meet the objective component necessary to implicate the Fourteenth [A]mendment." (internal quotation marks omitted)).

      **2.  Plaintiffs Have Alleged Facts Supporting Their Allegations that Defendants George and Cryer Consciously Disregarded a Substantial Risk of Serious Harm.**

To show deliberate indifference, Plaintiffs must allege that Defendants George and Cryer knew that Mr. Booker faced a substantial risk of harm and disregarded that

risk by "failing to take reasonable measures to abate it."  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The Tenth Circuit has made it clear that it does not intend this prong of the test to be an "insurmountable obstacle[]."  *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006). Importantly, whether Defendants George and Cryer "had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."  *Farmer*, 511 U.S. at 842. Defendants George and Cryer's subjective knowledge of Mr. Booker's serious medical needs can be established by showing either their (1) conscious disregard of a substantial risk of serious harm arising from Mr. Booker's symptoms, or (2) actual knowledge of Mr. Booker's medical injuries and refusal to order further treatment.  *Self*, 439 F.3d at 1233.

Upon Defendants' Motion to Dismiss, the Court is tasked with deciding *only* whether Plaintiffs have alleged sufficient facts which, if believed (as they must be at this stage), support a claim that Mr. Booker was denied adequate and timely medical care in violation of the Constitution.  Plaintiffs have alleged facts from which it certainly can be inferred that Defendants George and Cryer either consciously disregarded a substantial risk of serious harm to Mr. Booker (they refused to provide a timely *assessment*, let alone actual medical care), or that they had actual knowledge of Mr. Booker's medical injuries and improperly refused to order the appropriate treatment.  *Self*, 439 F.3d at 1233.  Plaintiffs have alleged that Defendants George and Cryer witnessed the deputies' multiple, simultaneous uses of force against Mr. Booker, including the use of a

Taser, and decided to return to their office to complete non-emergency paperwork instead of remaining at the scene.  Am. Compl. ¶¶ 39, 44, 50.[7]

In addition, throughout the course of discovery obtained from the Law Enforcement Defendants,[8] it has come to Plaintiffs' attention that Defendant George *consciously disregarded* any potential harm to Mr. Booker, as she stated (while laughing) in her Internal Affairs interview that she "prefer[s] not to" remain at the scene of a use of force, "because of this."  ***Ex. 2 – George Interview* at 43:01**.  During the same interview, Defendant George admitted that, when she arrived at the scene, Defendant Cryer said to her, "I think that's your little black man," referring to Mr. Booker, whom Defendant George had screened upon his arrival at the Jail.  ***Id.* at 28:14**.  Further, Defendant George recalled thinking, "if this was Mr. Booker, he's a small guy, and it was taking them a long time to get him under control."  ***Id.* at 39:39**.  Defendant George also stated during her interview that Defendant Rodriguez told her that Mr. Booker was "acting like he's unresponsive," and that Defendant George knows that inmates sometimes pretend they are unresponsive in order to get attention.  ***Id.* at 46:14**.

---

[7] Defendants' reliance on *Sardakowski v. Morgen*, No. 09-cv-01687-WYD-KMT, 2010 U.S. Dist. LEXIS 16175 (D. Colo. Jan. 25, 2010) is misplaced.  In *Sardakowski*, the court found that the plaintiff "failed to allege a deprivation which objectively is sufficiently serious' to constitute an Eighth Amendment violation," and went on to find that the plaintiff "completely fails to allege that the defendants knew of and disregarded an excessive risk to Plaintiff's health and safety."  *Id.* at *11 (internal quotation marks omitted).  Here, in contrast, Plaintiffs have alleged both a sufficiently serious injury and that, "with deliberate indifference to Mr. Booker's constitutional right not to be denied necessary medical care . . . Defendants failed to examine, assess, treat and care for Mr. Booker's condition.  *They did so despite their knowledge of his obvious serious medical needs, placing him at risk of substantial harm.*"  Am. Compl. ¶ 150 (emphasis added).

[8] Plaintiffs acknowledge that evidence obtained through discovery is not to be considered for purposes of Defendants' Motion to Dismiss for Failure to State a Claim.  Plaintiffs provide this information for purposes of Defendants George and Cryer's Alternative Motion for Summary Judgment.

Defendant Sharp's Internal Affairs interview sheds additional light on Defendant George's state of mind with respect to Mr. Booker's medical condition. Although Defendant George stated in her interview that only Defendant Rodriguez informed her that Mr. Booker needed medical attention, Defendant Sharp stated that he also requested medical assistance from Defendant George. ***Ex. 3 – Sharp Interview* at 16:30**. In fact, Defendant Sharp stated that he had to tell Defendant George *twice* to come to Mr. Booker's aid, as Defendant George was initially "nonchalant" about responding, and only provided assistance after Defendant Sharp "became more aggressive" with her. ***Id.* at 16:58**. Neither Defendant Sharp nor Defendant Rodriguez recalled Defendant Rodriguez telling Defendant George that Mr. Booker was faking his unresponsiveness. ***Ex. 3 – Sharp Interview* at 18:04**; ***Ex. 4 – Rodriguez Interview* at 52:27**.

Defendant George's version of the events surrounding her arrival at Cell I-8 to assess Mr. Booker's medical condition is vastly different from the accounts provided by both Defendants Sharp and Rodriguez. It is "well-settled . . . that false exculpatory statements are evidence – often strong evidence – of guilt." *Al-Adahi v. Obama*, 613 F.3d 1102, 1107 (D.C. Cir. 2010); *see also United States v. Penn*, 974 F.2d 1026, 1029 (8th Cir. 1992); *United States v. Meyer*, 733 F.2d 362, 363 (5th Cir. 1984).

It is impossible to conclude, at this stage, that no conceivable set of facts could support Plaintiffs' allegations that Defendants George and Cryer were deliberately indifferent – particularly given Defendant George's false exculpatory statements. Reading the facts in a light most favorable to Plaintiffs, as this Court must, Plaintiffs

have sufficiently pled a viable claim for deliberate indifference to Mr. Booker's obvious, serious medical needs, and Defendants' Motion should be denied.

**B. Plaintiffs Have Sufficiently Pled a Deprivation of Life without Due Process Claim.**

The Due Process Clause of the Fourteenth Amendment governs Plaintiffs' claims because Mr. Booker was a pretrial detainee. *Bell*, 441 U.S. at 535 n.16. As the Supreme Court explained in *Bell*: "Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be cruel and unusual under the Eighth Amendment." *Id.* This conclusion is consistent with the Supreme Court's prior reasoning expressed in *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977):

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

Plaintiffs have sufficiently alleged that Defendants George and Cryer "acted willfully, maliciously, in bad faith, and with reckless disregard of Mr. Booker's constitutionally protected federal rights." Am. Compl. ¶ 142. *Cf. Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) ("Petitioner does not claim that the city or any of its agents deliberately harmed her husband.").

**C. Plaintiffs Have Sufficiently Pled Their Municipal Liability Claims.**

Denver Health can be found liable under 42 U.S.C. § 1983 where Denver Health itself caused the violation of Mr. Booker's constitutional rights. *City of Canton v. Harris*,

489 U.S. 378, 385 (1989).  To state a claim for municipal liability against Denver Health for these claims, Plaintiffs must allege that 1) Denver Health had a policy, custom or practice which amounted to deliberate indifference to Mr. Booker's constitutional rights, and that 2) there is a direct causal link between the custom or policy and the violation alleged.  *Id.*; *see also Jenkins v. Wood*, 81 F.3d 988, 993-94 (10th Cir. 1996).

Plaintiffs have alleged that Denver Health's customs, policies, and practices were the moving force behind the violation of Mr. Booker's rights to be provided medical care or treatment and to be free from deprivation of life without due process of law.  Am. Compl. ¶¶145, 152.  Additionally, Plaintiffs have alleged that Denver Health was deliberately indifferent to the constitutional rights of detainees, including Mr. Booker, when it failed to adequately train or supervise its employees, and that deliberate indifference was the moving force behind the violations of Mr. Booker's constitutional rights.  Am. Compl. ¶¶ 157-158.[9]  These allegations suffice, at this stage of the litigation, to state a viable claim for municipal liability on the part of Denver Health.  *See Bryson v. Gonzales*, 534 F.3d at 1286 ("Technical fact pleading is not required.").

## II.  DEFENDANTS GEORGE AND CRYER ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

The facts as alleged in the Amended Complaint, and Supreme Court and Tenth Circuit case law, establish that Defendants George and Cryer are not entitled to qualified immunity from suit on either of Plaintiffs' claims for failure to provide medical

---

[9] Moreover, there is a history of inmate deaths and injuries at the Denver Jail caused by Denver Health medical personnel's deliberate indifference to detainees' serious medical needs.  *See, e.g., Estate of Emily Rae Rice v. Denver Health, et al.*, No. 07-cv-1571-MSK-BNB (D. Colo. 2007) (jail death resulting in $4 million settlement against Denver Health plus an agreement to promulgate and enforce significant policy changes).  A history of such constitutional violations can demonstrate municipal liability under *Monell.  Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)

care and treatment or deprivation of life without due process.  Once a defendant asserts a qualified immunity defense, a two-part burden shifts to the plaintiffs.  *See, Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000); *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995); *Albright v. Rodriquez*, 51 F.3d 1531, 1534 (10th Cir. 1995).  In order to defeat a defense of qualified immunity by Defendants George and Cryer, Plaintiffs must first allege that Defendants George and Cryer's actions violated a federally protected constitutional or statutory right.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This determination in the context of a 12(b)(6) motion requires the Court to determine whether a constitutional violation was pled by accepting all allegations as true and evaluating them in the light most favorable to the plaintiffs. *Kikumura v. Osagie,* 461 F.3d 1269, 1291 (10th Cir. 2006); *see also, Saucier v. Katz*, 533 U.S. 194, 201 (2001). Next, Plaintiffs must demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct. *Harlow*, 457 U.S. at 818.  In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether the right was sufficiently clear that a reasonable individual in the defendant's position would understand that what she is doing violates that right.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

As discussed more fully above, Plaintiffs have adequately alleged that Defendants George and Cryer violated Mr. Booker's constitutional rights.  The only remaining question is whether that right was clearly established at the time of the events at issue.  It has been well-established since at least *Estelle v. Gamble*, 429 U.S. 97

(1976), that a detainee has a right to be free from deliberate indifference to her serious medicals needs.  As stated by the Supreme Court in *Estelle*:

> Elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," . . . the evils of most immediate concern to the drafters of the Amendment. . . . The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency.

*Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (citations omitted).  This right has long been applied to pretrial detainees, such as Mr. Booker, through the Due Process Clause of the Fourteenth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 537 (1979).  Moreover, the numerous cases cited above, both from the Supreme Court and the Tenth Circuit Court of Appeals, show that Mr. Booker's constitutional right to be free from deliberate indifference to his serious medical needs was clearly established well before July 2010, and that a reasonable person in Defendant George's or Defendant Cryer's position would understand that what she was doing violated that right.[10]

---

[10] To the extent the Court determines it necessary to evaluate the intricate details of Defendants' conduct, including what they knew and believed about Mr. Booker's medical condition, a ruling on the Partial Summary Judgment Motion should be deferred until adequate discovery on those issues is obtained. *See* Plaintiff's Motion to Permit Further Discovery Pursuant to Federal Rule of Civil Procedure 56(d), filed contemporaneously with this Brief.

### III. PLAINTIFFS' STATE LAW CLAIMS SHOULD NOT BE DISMISSED AS A MATTER OF LAW.

### A. Plaintiffs' State Law Claims are not Barred by the CGIA.[11]

The Medical Defendants allege that Plaintiffs' state law claims are barred by the CGIA on two separate grounds: first, Defendants contend that Plaintiffs' failure to plead compliance with the CGIA requires dismissal of Plaintiffs' state law claims; second, the Medical Defendants contend that Plaintiffs failed to comply with the CGIA's notice provision.  Because Plaintiffs' failure to plead compliance can be cured by a simple amendment of the Amended Complaint, and because Plaintiffs fully complied with the CGIA's notice provision, to the extent that the Medical Defendants' Motion is based upon the CGIA, it should be denied.

#### 1. Plaintiffs Can Cure the Alleged Pleading Defect with an Amended Pleading.

Defendants allege that Plaintiffs' failure to plead compliance with the CGIA requires this Court to dismiss all of Plaintiffs' state law claims.  Dismissal when a statute of limitations would prevent refiling is an "extreme sanction." *Woodmore v. Git-N-Go*, 790 F.2d 1497, 1499 (10th Cir. 1986).  Even a dismissal without prejudice becomes extreme in such cases. *See Gocolay v. N.M. Fed. Sav. & Loan Ass'n*, 968 F.2d 1017, 1021 (10th Cir. 1992).  Here, because the statute of limitations would prevent Plaintiffs from refiling their state law claims against the Medical Defendants, the Court should not

---

[11] Plaintiffs' wrongful death claim, brought pursuant to C.R.S. § 13-21-202, is a statutory claim, and therefore not subject to the CGIA. *See, e.g., Julesburg School Dist. v. Ebke*, 562 P.2d 419, 421 (Colo. 1977).

dismiss those claims, but should instead permit Plaintiffs to amend their Amended

Complaint in order to cure this pleading deficiency.[12]

### 2.  Plaintiffs Fully Complied with the CGIA's Notice Provision.

The Medical Defendants allege that Plaintiffs failed to comply with C.R.S. § 24-

10-109(1) because they did not file a written notice of claim within 180 days of Mr.

Booker's death.  Colorado courts have established, however, that the 180-day clock

does not start running until the claimant discovers the "tortious act of another" that

underlies the claim.  *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848

P.2d 916, 296 (Colo. 1993).  Plaintiffs have always believed that Mr. Booker's death

was caused entirely by the conduct of the Law Enforcement Defendants.  Plaintiffs did

not become aware of the Medical Defendants' acts and omissions until the City and

County of Denver finally (after ten months) released surveillance videos of the incident

on May 9, 2011.  The written notice of claim served on the Medical Defendants on

September 23, 2011, was therefore timely under the CGIA.

The Colorado Supreme Court has explained that a claimant must have a

reasonable opportunity to discover the facts giving rise to a claim before the 180-day

clock starts running:

> Young alleged in her complaint that she did not discover all of the
> elements which comprise her claim for negligence until March 17, 1978,
> when she learned that the traffic ticket had been misfiled.  The misfiling
> furnished the causation for her March 1 incarceration.  To expect Young to
> have deduced the element of causation on March 1 in order that the
> statute of limitations would start to run on that date, as defendant argues,
> would "impose an unfair burden, if not an impossible requirement" upon
> Young.  The elements of a claim under the Colorado Governmental
> Immunity Act may not become known to a plaintiff in an order as neat and

---

[12] Had Medical Defendants conferred with Plaintiffs' counsel on this issue, it could have been resolved
without Court intervention.

> logical as they might be set out in a complaint or proven at trial.  We
> therefore hold that there must be a reasonable opportunity for a claimant
> to discover the basic and material facts underlying a claim before she is
> duty-bound to give the statutory notice as required by section 24-10-
> 109(1).

*State v. Young*, 665 P.2d 108, 11 (Colo. 1983).   Courts interpreting section 24-10-

109(1) have been consistent in requiring claimants to exercise reasonable diligence.

*See, e.g.*, *Grossman v. City and County of Denver*, 878 P.2d 125, 127 (Colo. App.

1994) ("[S]he had a duty of reasonable diligence to determine the basic and material

facts underlying her claim against a government entity.").

Plaintiffs have undoubtedly been both reasonable and diligent in attempting to

uncover the facts underlying their claims against all government entities and actors

implicated in Mr. Booker's death.  On July 14, 2010, just five days after Mr. Booker was

killed, undersigned counsel contacted then-Mayor John Hickenlooper, requesting a

meeting with City officials in order to enable Mr. Booker's family to uncover the details

surrounding his death.   ***Ex. 5 – Killmer – Hickenlooper Letter, Dated 7/14/2010***.  On

July 26, 2010, undersigned counsel sent *another* letter, this time to then-City Attorney

David Fine, requesting that the Booker family be provided with at least *some* information

regarding the circumstances surrounding Mr. Booker's death, including the surveillance

videos.   ***Ex. 6 – Newman – Fine Letter, Dated 7/26/2010***.  Had Plaintiffs at that point

been permitted to view the videos, they would have become aware of the Medical

Defendants' involvement in Mr. Booker's death.  Instead, on July 29, 2010, undersigned

counsel received a letter from the City stating:

> As to your complaint that the City has not released any information
> regarding the events leading to Mr. Booker's death or the status of the
> investigation, I can only tell you that we understand those frustrations but

we have to respect the confidentiality of the criminal investigation process. Hopefully, the results of the investigation will provide the Booker family at least some of the answers they are seeking.

***Ex. 7 – Pierce – Newman Letter, Dated 7/29/2010***.

On February 16, 2011, undersigned counsel sent a letter to then-Independent Monitor Richard Rosenthal, seeking information regarding the status of the investigation into Mr. Booker's death.  ***Ex. 8 – Killmer – Rosenthal Letter, Dated 2/16/2011***. Despite these repeated, consistent attempts to discover the facts surrounding Mr. Booker's death, and the bases for any legal claims Plaintiffs may have had, Plaintiffs were turned away by the City at every step.[13]  To now hold that Plaintiffs waited too long before asserting their claims against the Medical Defendants – claims based upon facts of which they were not aware until May 9, 2011 – would violate the consistent interpretation of Section 24-10-109(1), as, "the relevant question is when the plaintiff knew or should have known *the injuries were caused by the tortious act of another*." *Grossman*, 878 P.2d at 126.

Further, Plaintiffs sent a letter to Denver Health CEO Patricia Gabow on July 18, 2011, putting her on notice that Plaintiffs had only recently become aware of facts underlying potential claims against Denver Health.  ***Ex. 9 – Killmer – Gabow Letter, Dated 7/18/2011***.  On August 4. 2011, Plaintiffs received a letter from the Medical Defendants' counsel, stating that the Medical Defendants had investigated Plaintiffs' allegations, and that the Medical Defendants believe that "legal claims against Denver

---

[13] The examples provided herein are only some of the efforts Plaintiffs' counsel made to obtain the surveillance videos of the event, and are not nearly exhaustive.

Health and its nurses would not be well-founded.[14]  The purposes of the notice provision of the CGIA "are to allow a public entity to investigate and remedy dangerous conditions, to settle meritorious claims without incurring the expenses associated with litigation, to make necessary arrangements to cover potential liability, and to prepare for the defense of claims."  *Mesa County Valley Sch. Dist. No. 51 v. Kelsey*, 8 P.2d 1200, 1204 (Colo. 2000).  Given that the Medical Defendants were able to hire counsel, investigate the incident, and conclude that, in their opinion, Plaintiffs' claims were not legitimate, by (at the latest) August 2011, Plaintiffs' actions have achieved the purposes of the notice requirement.

Because Plaintiffs complied with the notice provision of the CGIA, and because the purposes of the notice requirement were served by Plaintiffs' actions, Defendants' Motion with respect to the CGIA notice provision should be denied.

**B. Plaintiffs Have Sufficiently Pled a Negligent Training and Supervision Claim.**

The Colorado Supreme Court has recognized "that a person who knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm may be directly liable for harm proximately caused by his conduct."  *Destefano v. Grabrian*, 763 P.2d 275, 288 (Colo. 1988).  According to the Restatement of Agency, "[t]he principal may be negligent because he has reason to know that the servant or other agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him."  Restatement (Second) of

---

[14] That letter, and a subsequent letter from Defendants' counsel to Plaintiffs' counsel dated August 18, 2011, are not attached as exhibits as they were written explicitly pursuant to Federal Rule of Evidence 408.  The point of mentioning them here is that they demonstrate Defendants' knowledge of all the issues, their investigation, and their subsequent response.  All purposes of the CGIA notice requirement were met.

Agency § 213, cmt. d (1958) (cited with approval in *Destefano*, 763 P.2d at 288).

According to the *Destefano* Court, the following allegation suffices to state a claim for

negligent supervision:

> Defendant Diocese of Colorado Springs knew or should have known that
> Defendant Grabrian was engaging in conduct which was outrageous,
> negligent, and a breach of his fiduciary duty, and Defendant Diocese owed
> a duty of supervision of said Defendant Gabrian to the public and
> breached said duty, causing the injuries and damages set forth above.

*Destafano*, 763 P.2d at 288.

Plaintiffs have alleged the following with respect to their state law claim for

negligent training or supervision:

- "Denver Health had a duty to exercise reasonable care in the training and
  supervision of its employees in a manner that provided the detainees
  under their care with reasonable medical care and treatment";

- "Defendant Denver Health breached its duty to exercise reasonable care
  in the training and supervision of its subordinate employees";

- "Denver Health, because it knew or should have known of the lack of
  supervision, experience and training among its employees, also had
  reason to know that its employees were likely to harm Denver Jail
  detainees in need of medical care, including Mr. Booker";

- "In failing to exercise reasonable care in the training and supervision of its
  employees relative to their providing reasonable medical care and
  treatment, Defendant Denver Health . . . was negligent";

- "The negligence of Defendant Denver Health proximately caused Mr.
  Booker significant physical and mental pain and suffering and other
  damages in the final minutes of his life"; and

- "Defendant's conduct has proximately caused Mr. Booker's parents, the
  Reverend B.R. Booker, Sr., and Mrs. Roxey Walton, significant pain,
  suffering, grief, loss of comfort and society, and other damages arising
  from the suffering and ultimate death of their son, Marvin Booker."

Am. Compl. ¶¶172-177.  These allegations are sufficient "that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins*, 519 F.3d at 1247.  Defendants' Motion should therefore be denied.

### C. Plaintiffs Have Sufficiently Pled a Negligent Medical Care and Treatment Claim.

"[T]o establish a prima facie case for negligence, a plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation, i.e. that the defendant's breach caused the plaintiff's injury."  *Martinez v. Lewis*, 969 P.2d 213, 217 (Colo. 1998).  Plaintiffs have sufficiently alleged each element of their negligent medical care and treatment claim.

Plaintiffs have alleged that Mr. Booker "was under the medical responsibility, care and treatment of Denver Health and its nurses" while he was in jail, and that "Defendants had a duty to provide reasonable medical care and treatment to detainees at [the] Jail, including Mr. Booker."  Am. Compl. ¶¶ 184, 187.  In fact, such a duty is imposed by Colorado law.  C.R.S. 16-3-401(2) ("Persons arrested or in custody shall be treated humanely and provided with adequate food, shelter, and, if required, medical treatment."); *see also Poudre Valley Health Care v. City of Loveland*, 85 P.3d 558, 560 (Colo. ) (noting that C.R.S. § 16-3-41(2) "unambiguously imposes a duty on governmental entities to provide medical treatment and care for detainees in their custody").  Plaintiffs further alleged that, "[w]ith respect to their care and treatment of Marvin Booker, Denver Health Defendants owed him a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of nurses in similar situations."  Am. Compl. ¶ 189.  These allegations, combined with the legal duty

imposed upon medical personnel at detention facilities, are sufficient to satisfy the "duty" prong of the negligence test.  Contrary to Defendants' assertions, Plaintiffs do not allege that Defendants had a duty to intervene in the struggle between the deputies and Mr. Booker; rather, the duty alleged is the duty of reasonable care to "properly assess, diagnose and treat Marvin Booker *after he had been assaulted* by the Law Enforcement Defendants described herein."  Am. Compl. ¶ 190.

Plaintiffs have likewise sufficiently alleged that "Defendants breached their duty of care and were negligent *when they failed to provide Mr. Booker with reasonably obtainable and necessary emergency treatment*."  Am. Compl. ¶ 188 (emphasis added). Plaintiffs have, within that allegation, provided the factual basis for the breach of Defendants' duty to Mr. Booker.[15]

With respect to causation and damages, Plaintiffs have alleged that, "[a]s a direct and proximate result of the conduct of the Denver Health Defendants, Marvin Booker suffered significant physical and mental pain and suffering and other damages in the final minutes of his life, and ultimately his death."  Am. Compl. ¶ 191.  Plaintiffs allege additional damages "due to Defendants' negligent conduct toward their son, including but not limited to economic damages for funeral expenses and financial losses due to the financial benefits they would have reasonably expected to receive from their son had he lived, and non-economic damages for grief, loss of their son's companionship, impairment in the quality of their lives, inconvenience, pain and suffering, and extreme emotional stress."  Am. Comp. ¶ 192.  These allegations are sufficient to state a claim

---

[15] Expert testimony in the area of emergency medicine will support the conclusion that the jail nurses' response to the situation represented a deliberate indifference to the obvious serious medical needs of Mr. Booker, and fell below the standard of care for a medical provider under the circumstances.

for medical negligence, and Defendants' Motion with respect to Plaintiffs' medical

negligence claim should be denied.

### D. Plaintiffs Have Sufficiently Pled a Wrongful Death Claim.

Pursuant to C.R.S. 13-21-202:

> When the death of a person is caused by a wrongful act, neglect, or
> default of another, and the act, neglect, or default is such as would, if
> death had not ensued, have entitled the party injured to maintain an action
> and recover damages in respect thereof, then, and in every such case, the
> person who or the corporation which would have been liable, if death had
> not ensued, shall be liable in an action for damages notwithstanding the
> death of the party injured.

Here, as explained thoroughly above, Mr. Booker's death was the result of the

wrongful acts or neglect of the Medical Defendants.   Plaintiffs have alleged that

"Defendants' conduct was attended by circumstances of malice, or willful and wanton

conduct, which Defendants must have realized was dangerous, or that was done

heedlessly and recklessly, without regard to the consequences to Mr. Booker and his

parents," and that, "Defendants consciously disregarded a substantial and unjustifiable

risk that they knew or should have known would cause the death of another."   Am.

Compl. ¶¶ 180-181.

### E.  Plaintiffs' Survival Action Claim Should Not be Dismissed.

Pursuant to C.R.S. § 13-20-101, "[a]ll causes of action, except actions for slander

or libel, shall survive and may be brought or continued notwithstanding the death of the

person in favor of or against whom such action has accrued."  Because, as explained

fully above, Plaintiffs' substantive claims under both federal and state law survive the

Medical Defendants' Motion to Dismiss, Plaintiffs' survival action claim also should not

be dismissed.

**CONCLUSION**

As discussed above, Plaintiffs have sufficiently pled all of their state and federal claims.  Additionally, Defendants George and Cryer are not entitled to qualified immunity on any of Plaintiffs' claims, and Plaintiffs' state law claims are not barred by the CGIA.  As a result, Defendants' Motion should be denied it its entirety.

Dated this 3rd day of January 2012.

KILLMER, LANE & NEWMAN, LLP


s/ *Darold Killmer*
Darold W. Killmer
Mari Newman
Lauren Fontana
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 (fax)
dkillmer@kln-law.com
mnewman@kln-law.com
lfontana@kln-law.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

 I hereby certify that on the 3rd day of January 2012, I served a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE TO MEDICAL DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM AND ALTERNATIVE MOTION OF DEFENDANTS GEORGE AND CRYER FOR PARTIAL SUMMARY JUDGMENT ON QUALIFIED IMMUNITY** via U.S. Mail and the Court's ECF filing system, which sent electronic notification to the following:

Thomas S. Rice
Sonja S. McKenzie
Eric M. Zipori
SENTER GOLDFARB & RICE, LLC
1700 Broadway, Suite 1700
Denver, CO 80290
(303) 320-0509
trice@sgrllc.com
smckenzie@sgrllc.com
eziporin@sgrllc.com

Thomas Bigler
Denver City Attorney's Office
201 West Colfax Avenue, Dept. 1108
Denver, CO 80202
(720) 865-8751
Thom.bigler@denvergov.org

*Attorneys for all Defendants ("**Defendants**")*

Sean T. Olson
Douglas Jewell
BRUNO, COLIN, JEWELL & LOWE, PC
1999 Broadway
Denver, CO 80204
(303) 831-1099
solson@bcjlpc.com
ldjewell@bcjlpc.com

*Attorneys for Defendant Carrie Rodriguez ("**Defendant Rodriguez**")*
*and Defendant Gomez in her individual capacity ("**Defendant Gomez**")*

David C. Colt
COLT LAW FIRM, PC
501 South Cherry Street, Suite 1060
Denver, CO 80246

(303) 355-1800
davidcolt@coltlawfirm.com

*Attorney for Defendant Kyle Sharp ("**Defendant Sharp**")*

Jonathan M. Abramson
KISSINGER & FELLMAN, PC
3773 Cherry Creek North Drive, Suite 900
Denver, CO 80209
jonathan@kandf.com

*Attorney for Defendant James Grimes ("**Defendant Grimes**")*

Brent Johnson
FAIRFIELD & WOODS P.C.
1700 Lincoln St., Ste. 2400
Denver, CO 80203
(303) 830-2400
bjohnson@fwlaw.com

Scott S. Nixon
Patrick A. Singer
PRYOR JOHNSON CARNEY KARR NIXON, P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO  80111
Phone:  (303) 874-3406
snixon@pjckn.com
psinger@pjckn.com

*Attorneys for Defendants Denver Health and Hospital Authority d/b/a Denver Health Medical Center, Gail George, R.N. and Susan Cryer, R.N.*

        *s/ Jesse Askeland*
        Jesse Askeland