**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-00645-RBJ-KMT

ESTATE OF MARVIN L. BOOKER, and
ROXEY A. WALTON, individually and as Personal Representative,

        Plaintiffs,

v.

CITY AND COUNTY OF DENVER;
DEPUTY FAUN GOMEZ, individually and in her official capacity;
DEPUTY JAMES GRIMES, individually and in his official capacity;
DEPUTY KYLE SHARP, individually and in his official capacity;
DEPUTY KENNETH ROBINETTE, individually and in his official capacity; and
SERGEANT CARRIE RODRIGUEZ, individually and in her official capacity,

        Defendants.

_____

**PLAINTIFFS' TRIAL BRIEF REGARDING COMPENSATORY DAMAGES**
_____

Plaintiffs, through undersigned counsel, hereby file their Trial Brief Regarding Compensatory Damages, and state as follows:

### Introduction

If the jury finds any of the Defendants liable on any of Plaintiffs' claims, Mr. Booker's estate can recover compensatory damages that encompass medical and burial expenses, Mr. Booker's pain and suffering before death, loss of earnings, (including Social Security Disability Insurance benefits) based upon the probable duration of the victim's life had not the injury occurred, Mr. Booker's loss of consortium, and Mr. Booker's loss of enjoyment of life. *Berry v. Muskogee*, 900 F.2d 1489, 1504-07

1

(10th Cir. 1990). All these compensatory damages must be available to fulfill § 1983's key purposes of deterrence and remediating the particular harm done.

## Analysis

**I.     Compensatory damages available for claims under § 1983**

Both 42 U.S.C. §§ 1983 and 1988 are "remedial reconstruction civil rights statutes and were enacted as part of the 1866 and 1870 civil rights acts and the Ku Klux Klan Act of 1871." *Sager v. Woodland Park*, 543 F. Supp. 282, 286 (D. Colo. 1982) (citing *United States v. Price*, 383 U.S. 787, 789 (1966) (internal footnote omitted). "[T]here is no question that congress intended, through these statutes, to deter official lawlessness, to compensate the bereaved families for the then-rampant state and local acts of officially-condoned murder and thereby provide remedies in death cases . . . ." *Id.* at 287. "[B]eyond providing compensation for victims of illegal conduct, it is clear that § 1983 was intended to provide special deterrence for civil rights violations." *Berry*, 900 F.2d at 1503.

Although § 1983 provides a cause of action for deprivations of constitutional rights, § 1983 does not include provisions for the survival of a cause of action for the benefit of a decedent's estate when the decedent dies after the cause of action has accrued, or when a decedent's death directly results from a violation of the decedent's constitutional rights. Section 1988 of title 42 of the United States Code, however, provides for § 1983 actions. Section 1988 refers the federal district courts to state law when federal law fails to carry out the purposes of § 1983, unless the state law is inconsistent with the United States Constitution or federal law. 42 U.S.C. § 1988; *see also Robertson v. Wegmann*, 436 U.S. 584, 588 (1978) (§ 1988 governs survival of §

1983 actions); *McDonald v. Verble*, 622 F.2d 1227, 1234-35 (6th Cir. 1980) (§ 1983 rule of damages, even if federal court adopts damage remedy from state law, is federal rule to redress violations of federal rights).

Federal courts are empowered to fashion remedies that are appropriate to the particular injury in § 1983 actions. *See Carey v. Piphus*, 435 U.S. 247, 258-59 (1978) ("In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law."). The United States Supreme Court repeatedly has held that compensation is a basic purpose of section 1983 remedies. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306-07 (1986) ("[D]amages in tort cases are designed to provide *compensation* for the injury caused to the plaintiff by the defendant's breach of duty. To that end, compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . . , personal humiliation, and mental anguish and suffering.") (internal quotation marks, footnotes, and citations omitted) (emphasis in original); *Carey*, 435 U.S. at 258-60.

Accordingly, several federal courts, including the Tenth Circuit and District of Colorado, have decided that state statutes cannot bar federally-fashioned remedies in § 1983 actions arising from unconstitutional activity that results in a person's death. *See e.g., Rosa v. Cantrell*, 705 F.2d 1208, 1220-24 (10th Cir. 1982) (state law cannot prohibit § 1983 actions when § 1983 cause of action arises from decedent's death), *cert. denied,* 464 U.S. 821 (1983); *Sager*, 543 F. Supp. at 292-97 (state law only may

3

expand, not restrict, § 1983 remedies); *Larson v. Wind*, 542 F. Supp. 25, 26-27 (N.D. Ill. 1982) (state law cannot interfere with survival of § 1983 remedies when unconstitutional conduct causes death); *O'Conner v. Several Unknown Corral. Officers*, 523 F. Supp. 1345, 1347-49 (E.D. Va. 1981) (state law cannot deny recovery in § 1983 action for injuries deprivation of decedent's life causes); *see also* U.S. CONST. ART. VI (Supremacy Clause).

In the seminal case of *Berry v. Muskogee,* the Tenth Circuit carefully considered whether the purposes of § 1983 would satisfied by adoption of state survival and wrongful death actions and concluded that they would not, stating:

> [W]e must consider that different states will define them differently, thus requiring individual analyses of each state's law. We might have to find that a state's law works satisfactorily in some instances, as when there are surviving dependents, but not in other cases, as when there is no one with a right to sue. Weighing these concerns, and considering the Supreme Court's approach in *Smith, Memphis Community School District*, and *Garcia*, we conclude that supplementing a state survival action with a state wrongful death action does not satisfy the criteria of § 1988 for borrowing state law. The laws are not suitable to carry out the full effects intended for § 1983 cases ending in death of the victim; they are deficient in some respects to punish the offenses. Application of state law, at least in some instances, will be inconsistent with the predominance of the federal interest.
>
> We therefore conclude, as did the Sixth Circuit in *Jaco*, that the federal courts must fashion a federal remedy to be applied to § 1983 death cases. The remedy should be a survival action, brought by the estate of the deceased victim, in accord with § 1983's express statement that the liability is "to the party injured." 42 U.S.C. § 1983. It must make available to plaintiffs sufficient damages to serve the deterrent function central to the purpose of § 1983. . . .
>
> We believe appropriate compensatory damages would include medical and burial expenses, pain and suffering before death, loss of earnings based upon the probable duration of the victim's life had not the injury occurred, the victim's loss of consortium, and other damages recognized in common law tort actions.

4

*Berry v. Muskogee*, 900 F.2d 1489, 1506-07 (10th Cir. 1990).Therefore, any Colorado state law limitations on damages available to Plaintiffs do not apply here. *Id.*

In addition, while *Berry* determined that "Congress clearly envisioned § 1983 to serve as a remedy for wrongful killings that resulted from the proscribed conduct," *id.* at 1502, the court did not provide specific guidance as to how that federal remedy should be realized to fulfill both its remedial and deterrent goals. The court instead described in general terms the federal remedies that must be available in survival claims brought under § 1983 while also preserving federal courts' discretion to fashion remedies responsive to the particular injury. *Id.* at 1597 (permitting recovery of "other damages recognized in common law tort actions"); *see also Kalina v. Fletcher*, 522 U.S. 118, 123 (1997) (damages remedy in § 1983 actions is "broader than the pre-existing common law of torts"); *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 240 (1969) (deeming it appropriate to fashion "a federal rule responsive to the need whenever a federal right is impaired"), *superseded by statute on different grounds as stated in Oliver v. Dunn Co.*, 2009 U.S. Dist. LEXIS 40434 at *10-11 (C.D. Ill., Apr. 7, 2009).

### A. Loss of consortium

As to the specific damages appropriate here, Plaintiffs' loss of consortium damages should encompass Mr. Booker's severed relationship with his mother and father (who passed away in February 2013) and his siblings. *Sager*, 543 F. Supp. at 288 (survival action "is essentially the assertion of the cause of action that the deceased would have had had he lived, requesting damages for violation of the decedent's rights"). Under Colorado law, which can expand but not restrict § 1983 remedies, *id.* at 292-97, damages for loss of consortium from the death of a child are recoverable.

*Bartlett v. Elgin*, 973 P.2d 694, 698 (Colo. App. 1998) (citing C.R.S. § 13-21-203) (Wrongful Death Act); *see also Herbertson v. Russell*, 371 P.2d 422 (Colo. 1962) (parents are entitled to anticipated support in their declining years; "net pecuniary loss" has been construed so as to include not only the loss to the parent of the services and earnings which they could have reasonably expected from their child during his or her minority, less their expenditures for his or her maintenance, but also includes the loss of services and support which they could have reasonably anticipated during their "declining years," but for the untimely death). Mr. Booker's loss of consortium with his parents, along with his siblings, also is compensable because he had an intrinsically significant relational interest with each of them as his first-degree blood relatives, and Mr. Booker did in fact maintain a close relationship with each – especially his mother, Roxey Walton.[1] *See, e.g., In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1237 (5th Cir. 1986) (decedent's survivors entitled to damages for loss of decedent's love and affection); *Platt v. McDonnell Douglas Corp.*, 554 F. Supp. 360, 361 (E.D. Mich. 1983) (decedent's siblings may recover damages for loss of decedent's society and companionship); *Leavy v. Yates*, 142 N.Y.S.2d 874, 876 (Sup. Ct. 1955) (allowing sibling recovery)[2]; *see also Trujillo v. Bd. of Cnty. Comm'rs*, 768 F.2d 1186, 1189 (10th Cir. 1985) ("Although the parental relationship may warrant the greatest degree of protection and require the state to demonstrate a more compelling interest to justify an

---

[1] Any questions that may exist about the exact nature of Mr. Booker's prior relationships with his family members are relevant to the size of his Estate's recoverable damages (a jury question), not whether loss of consortium damages are potentially available with respect to particular family members.

[2] Because these decisions recognize that a number of familial relationships are sufficiently important to allow for living relatives to recover loss of consortium damages on their own behalf, it follows that Mr. Booker's inability to maintain these important relationships with his relatives because of Defendants' actions is also compensable, as his loss of consortium damages certainly are no less significant than those incurred by individuals who are not killed.

intrusion on that relationship, we cannot agree that other intimate relationships are unprotected and consequently excluded from the remedy established by section 1983. We therefore hold that Rose and Patricia Trujillo had constitutionally protected interests in their relationship with their son and brother, Richard Trujillo.");[3] *Lozoya v. Sanchez*, 66 P.3d 948, 955 (N.M. 2003) (loss of consortium available even for unmarried cohabitants who share significant relational interest), *overruled in part on other grounds by Heath v. La Mariana Apts.*, 143 N.M. 657, 663 (2008).

### B.     Loss of enjoyment of life

Plaintiffs also are entitled to compensatory damages for Mr. Booker's loss of enjoyment of life ("hedonic damages").[4] The Tenth Circuit has recently stated:

> The concept of hedonic damages is premised on what we take to be the rather noncontroversial assumption that the value of an individual's life exceeds the sum of that individual's economic productivity. In other words, one's life is worth more than what one is compensated for one's work. The assumption that life is worth more than the sum of economic productivity leads to the equally noncontroversial conclusion that compensatory awards based solely on lost earnings will under-compensate tort victims.

*Smith v. Ingersoll-Rand Co.*, 214 F.3d, 1235 1244-45 (10th Cir. 2000) (testimony in New Mexico tort case about meaning of hedonic damages concerning the value of a plaintiff's loss of enjoyment of life deemed relevant); *Hobbs v. Hartford Fire Ins. Co.*,

---

[3] Though the *Trujillo* court held that an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under § 1983, this intent requirement is irrelevant here because all the claims are brought on behalf of the decedent, Mr. Booker, and the loss of consortium at issue is the "victim's," i.e., Mr. Booker's. Only if living individuals (like Mr. Booker's parents) asserted their own intimate association claims against the Defendants would *Trujillo*'s holding with respect to intent potentially be relevant. *Trujillo* is nonetheless important because it shows that the Tenth Circuit has accorded great significance to parent-child and sibling relationships by holding that they are constitutionally-protected associational interests.

[4] Of course, Plaintiffs acknowledge they cannot recover twice for Mr. Booker's same injuries. As such, the loss of enjoyment of life damages Plaintiffs should have the opportunity to receive are those that do not fit in into the other categories of compensatory damages to which they are entitled.

162 F.3d 576, 580-81, n.2 (10th Cir. 1998) (plaintiff in New Mexico tort case was allowed to present evidence and expert testimony on hedonic damages for the loss of decedent's enjoyment of life).[5] In addition, it is well established that pain and suffering damages are compensable under § 1983. *See, e.g., Carey*, 435 U.S. at 263-64. Numerous state courts have included hedonic loss in pain and suffering damages. *See, e.g., First Trust Co. v. Scheels Hardware & Sports Shop, Inc.*, 429 N.W.2d 5, 13-14 (N.D. 1988) (hedonic loss assessed under pain and suffering damages); *Missouri Pac. R.R. v. Lane*, 720 S.W.2d 830, 834 (Tex. Ct. App. 1986) (in determining damages, hedonic loss may be factored into general pain and suffering damages); *Poyzer v. McGraw*, 360 N.W.2d 748, 753 (Iowa 1985) (hedonic loss considered under general pain and suffering); *Flannery v. United States*, 297 S.E.2d 433, 436-38 (W. Va. 1982) (hedonic loss is part of permanent injury damages), cert. denied, 467 U.S. 1226 (1984), *abrogated in part on other grounds by Dawson v. United States*, 2013 U.S. Dist. LEXIS 84143 *at 9-12 (N.D. W. Va. June 14, 2013); *Blodgett v. Olympic Sav. & Loan Ass'n*, 646 P.2d 139, 145-46 (Wash. Ct. App. 1982) (hedonic loss is contained in pain and suffering damages); *Judd v. Rowley's Cherry Hill Orchards, Inc.*, 611 P.2d 1216, 1221 (Utah 1980) (recognizing diminished life enjoyment as part of mental pain and suffering damages); *Sullivan v. Price*, 386 So. 2d 241, 243 n.2 (Fla. 1980) (hedonic loss considered within category of pain and suffering damages); *Willinger v. Mercy Catholic Med. Ctr.*, 393 A.2d 1188, 1191 (1978) (loss of enjoyment of life's pleasures figures into pain and suffering damages).

---

[5] While attempts to quantify the non-economic portion of the value of life can be controversial, particularly with respect to expert testimony, that controversy does not diminish the relevance of hedonic damages to the compensation of the victim. *Id.* at 1245-46.

Likewise, federal courts have fashioned damage remedies for a decedent's loss of life and loss of the pleasure of living in § 1983 actions arising from the unconstitutional deprivation of a decedent's life. *See, e.g., Bell v. Milwaukee*, 746 F.2d 1205, 1234-35 (7th Cir. 1984) (adopting loss of life and loss of enjoyment of life damages), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783, 783 (7th Cir. 2005) (holding that parents do not have constitutional right to recover for their loss of the companionship of an adult child when that relationship is terminated as an incidental result of state action); *Sherrod v. Berry*, 629 F. Supp. 159, 163 (N.D. Ill. 1985) (adopting hedonic damages for loss of life), *vacated*, 835 F.2d 1222 (7th Cir. 1988), *rev'd en banc on other grounds*, 856 F.2d 802 (7th Cir. 1988); *Roman v. Richmond*, 570 F. Supp. 1554, 1557-58 (N.D. Cal. 1983) (fashioning "deterrent damages" for loss of life); *Guyton v. Phillips*, 532 F. Supp. 1154, 1167-68 (N.D. Cal. 1981) (adopting loss of life damages); *see also O'Gee v. Dobbs Houses, Inc.*, 570 F.2d 1084, 1092 n.2 (2d Cir. 1978) (Feinberg, C.J., dissenting) (federal court system has long recognized hedonic loss); *Plummer v. Abbott Labs.*, 568 F. Supp. 920, 922 (D. R.I. 1983) (goal of damages is to compensate injured party for harm sustained); *Hedonic Damages In Section 1983 Actions: A Remedy For The Unconstitutional Deprivation Of Life*, 44 WASH. & LEE L. REV. 321, 343 (1987) ("Federal courts not only have the authority, but also the obligation to adopt section 1983 remedies that will ensure compensation for deprivations of individuals' constitutional rights. Although no amount of compensation can restore life to a decedent, hedonic damages are completely in accord with other money damages Anglo-American law recognizes as appropriate when a wrongdoer causes a person to suffer injury or death."); Comment, *Loss of Enjoyment of Life as a*

9

*Separate Element of Damages*, 12 PAC. L.J. 965, 965 (1981) (hedonic loss was first recognized as an element of damages in the 1890s).

For example, in *Bell v. Milwaukee*, the United States Court of Appeals for the Seventh Circuit considered the propriety of a lower court jury verdict of $100,000 for a decedent's loss of life and loss of the enjoyment of living. 746 F.2d at 1235. The § 1983 action in *Bell* arose from the unjustified police shooting and killing of Daniel Bell. *Id.* at 1214. Noting the policies of compensation and deterrence underlying section 1983, the Seventh Circuit held that Wisconsin law prohibiting damages for the loss of a decedent's life interfered with the section 1983 policies of compensation and deterrence. *Id.* at 1235. In upholding the $100,000 award for the decedent's loss of life and loss of the enjoyment of living, the *Bell* court stressed the deterrent effect that damage awards for loss of life have on curbing official lawlessness. *Id.* at 1238-41.

Additionally, the Seventh Circuit in *Bell* differentiated between the deterrent effect of loss of life damages and the punishing effect of punitive damages in upholding a punitive damage award for the decedent's estate in addition to the deterrent loss of life damage award. *Id.* at 1279-80. Thus, the Seventh Circuit in Bell recognized the Supreme Court's mandate in *Carey* that courts should fashion section 1983 remedies to fit particular injuries and established a remedy for the unconstitutional deprivation of life. *Id.* at 1234-41.

Similarly, rather than labeling § 1983 loss of life damages "deterrent damages," the District Court for the Northern District of Illinois in *Sherrod v. Berry* awarded a decedent's estate hedonic damages for the value of the decedent's lost life and lost pleasure of living. 629 F. Supp. at 163. Recognizing that compensation is the basic

10

purpose of section 1983 damages, the district court in *Sherrod* instructed the jury to compensate the estate of Ronald Sherrod for the value of Sherrod's life if the jury found the defendants liable for violating Sherrod's Fourteenth Amendment right to life. *Id.* at 160. The jury in *Sherrod* found each defendant liable and awarded Sherrod's estate $850,000 for the "hedonic" value of Sherrod's life. *Id.*

The district court in *Sherrod* defined damages for the hedonic value of a person's life as compensation for a person's loss of life and loss of the pleasures of living. *Id.* The court found that the phrase, "hedonic value of life" encompasses the totality of a person's existence, which, according to the court, includes the economic, moral, and philosophical value that society places on life. *See id.* at 163 (defining hedonic value of life). In addition, the *Sherrod* court maintained that a person's enjoyment of activities in life and expectations of life's future prospects are elements of the hedonic value of a person's life. *Id.* The *Sherrod* court continued that although a person's economic status may relate to that individual's pleasure of living, hedonic damages do not measure a person's economic worth or future earnings capacity. *See id.* at 162. The *Sherrod* court, therefore, found that hedonic damages require a subjective analysis of an individual's life and the pleasure that the particular individual derived from living. *See id.* at 163-64.

As in *Bell* and *Sherrod*, the jury here should undertake a subjective analysis of Mr. Booker's life and the pleasure that he derived from living to determine the suitable amount of hedonic damages.[6] The testimony of individuals who knew Mr. Booker and had relationships with him is necessary to enable the jury to analyze the hedonic value of Mr. Booker's life. *See id.* at 163; *see also Shannon v. Shaffer Oil & Refining Co.*, 51

---

[6] To be clear: Plaintiffs contend that the jury should assess the value of Mr. Booker's life, not the value of Mr. Booker's right to life. *See Stachura*, 477 U.S. 299 (holding that § 1983 damages for abstract value of constitutional right are invalid).

11

F.2d 878, 881 (10th Cir. 1931) (difficulty in assessing damages not grounds for denying damages). Mr. Booker's projected future emotional, psychological, and physical damages would be compensable had he been injured but not killed by Defendants. As Judge Kane persuasively reasoned in *Sager*:

> It would be anomalous as well as ironic to hold that Jones, Jr. could have sought redress for violation of his constitutional rights had he survived the alleged wrongdoing, but because the wrongdoing caused his death, the law is impotent to provide a remedy to benefit his estate. Such a holding would not only fail to effectuate the policy of allowing complete vindication of constitutional rights, it would subvert that policy. . . . Allowing recovery for injury but denying relief for the ultimate injury-death-would mean that it would be more advantageous for a tortfeasor to kill rather than to injure. Surely this cannot be the intent of the law.

543 F. Supp. at 296 (quoting *Green v. Carlson*, 581 F.2d 669, 674 (7th Cir. 1978) (Bivens action). This Court should reach a similar conclusion here.

### C.    Loss of earnings, including Social Security Disability Insurance benefits

Finally, Mr. Booker's "loss of earnings based upon the probable duration of the victim's life had not the injury occurred," *Berry*, 900 F.2d at 1507, include his long-term Social Security Disability Insurance (SSDI) benefits he would have received for the probable duration of his life. "The conclusion that social security disability benefits are a substitute for wages is inescapable. . . ." *Vitti v. Allstate Ins. Co.*, 713 A.2d 1269, 1281 (Conn. 1998). SSDI benefits are "are meant to provide wage replacement during periods of disability . . . ." *Id.* at 1282. Therefore, when Mr. Booker died, SSDI benefits were his "earnings," *Berry*, 900 F.2d at 1507, by virtue of a prior official determination that he had "a disability so severe that []he is 'unable to do [his] previous work' and 'cannot . . . engage in any other kind of substantial gainful work which exists in the

12

national economy.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797 (1999) (quoting § 223(a) of the Social Security Act, as set forth in 42 U.S.C. § 423(d)(2)(A)).

"[T]he interest of an individual in continued receipt of [SSDI] benefits is a statutorily created 'property' interest protected by the Fifth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (internal citations omitted). Accordingly, procedural due process protections apply when SSDI benefits are terminated. *Id*. Because the circumstances of Mr. Booker's death clearly were a procedurally inadequate means of terminating his entitlement to the continued receipt of SSDI benefits, he and – by proxy – his Estate have a continued legitimate claim to all these long-term benefits up until the probable time of his death.

In *Sparks v. Susquehanna County*, a § 1983 survival action, the court addressed the defendants' motion in limine contending that the plaintiff's recovery from her social security disability benefits should be reduced by the cost of her maintenance. 2009 U.S. Dist. LEXIS 61312 (M.D. Pa. July 17, 2009). After noting that the "court ruled earlier that plaintiff may recover for her lost social security income in this action," the court then looked to Pennsylvania tort law and held that available damages included "earing [sic] power--less personal maintenance expenses, from the time of death through his estimated working life span." *Id*. at 5 (citing *Kiser v. Schulte*, 538 Pa. 219, 648 A.2d 1, 4 (Pa. 1994) (state wrongful death and survival action)). Though the *Sparks* court correctly concluded that social security benefits are recoverable in § 1983 survival actions, its applicability to the instant case is quite limited because this action is in Colorado (obviously) and, more importantly, because courts in the Tenth Circuit should

13

fashion a federal remedy in survival actions under § 1983. *Berry*, 900 F.2d at 1506-07.[7] Describing (non-exhaustively) this federal remedy, the Tenth Circuit has explicitly held that "earnings based upon the probable duration of the victim's life had not the injury occurred" are recoverable – without any limitation. *Id.* at 1507.

As discussed, compensation is a basic purpose of § 1983 remedies and federal courts have broad discretion to fashion remedies that fit the particular injury. *Kalina*, 522 U.S. at 123; *Stachura*, 477 U.S. at 306-307; *Carey*, 435 U.S. at 257-258; *Sullivan*, 396 U.S. at 240. The compensation available to Mr. Booker's Estate should include his SSDI benefits because this was his income. *See, e.g., Hoyal v. Pioneer Sand Co., Inc.*, 188 P.3d 716, 717 (Colo. 2008) (noting that plaintiffs in wrongful death action are "entitled to compensation for the loss of financial benefits he or she reasonably would have expected to receive from the decedent had the decedent lived").[8] If Plaintiffs prevail on any of their claims, providing them with the opportunity to receive the full value of Mr. Booker's SSDI benefits for the likely duration of his life would not be granting a windfall to the Estate. Rather, it would be a wholly appropriate remedy to account for the fact that Mr. Booker (which his Estate represents) has been permanently deprived of the

---

[7] Further, as a practical matter, there should no maintenance offset for Mr. Booker because the evidence shows that Mr. Booker maintained his lifestyle for years as a homeless man who did not earn a regular income before being approved for SSDI benefits in April 2010. This established a baseline level of personal maintenance expenses that was, essentially, zero. And, as the evidence shows, when Mr. Booker received his first SSDI check, he sent a portion of it to his mother and used much of the rest to pay off his debts to people, rather than allocating the money for personal maintenance.

[8] Defendants' legal theory in their Motions in Limine [Doc. 229] regarding the "collateral source doctrine" is inapposite because the collateral source doctrine only applies to compensation or benefits conferred "in relation to" a plaintiff's injury." C.R.S. § 13-21-111.6. Mr. Booker plainly did not receive SSDI benefits "in relation to" his death at the hands of the Law Enforcement Defendants. In addition to being legally incorrect, Defendants' Motion in Limine is a premature means of addressing this issue. *See Baumann v. Am. Family Mut. Ins. Co.*, No. 11-cv-00789-CMA-BNB, 2012 U.S. Dist. LEXIS 5247, at *15-16 (D. Colo. Jan. 17, 2012) ("Under the collateral source statute, any reduction in an award to a plaintiff is determined 'after the finder of fact has returned its verdict.'") (quoting C.R.S. § 13-21-111.6)).

opportunity to receive his earnings because of Defendants' conduct. *Sager*, 543 F. Supp. at 288.

## **Conclusion**

WHEREFORE Plaintiffs respectfully request that this Court permit Plaintiffs to recover compensatory damages that include Mr. Booker's medical and burial expenses, Mr. Booker's pain and suffering before death, loss of earnings (including Social Security Disability Insurance benefits) based upon the probable duration of the victim's life had not the injury occurred, Mr. Booker's loss of consortium, and Mr. Booker's loss of enjoyment of life.

DATED this 3rd day of October, 2014.

KILLMER, LANE & NEWMAN, LLP

*s/ Darold W. Killmer*
_____
Darold W. Killmer
Mari Newman
Michael P. Fairhurst
Darren Jankord
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 (fax)

*Counsel for Plaintiffs*