**Instruction No. 1**

The Court will now instruct you on the claims and defenses of the parties and the law applicable to this case.

The Fourteenth Amendment to the United States Constitution provides that no state or municipal authority may deprive any person of life, liberty or property without due process of law. Among other things, this Constitutional right protects pre-trial detainees from the use of "excessive force" against them by law enforcement officers working in a detention facility.

Marvin L. Booker was a pre-trial detainee in the Downtown Detention Facility operated by the Denver Sheriff's Department in the early morning hours of July 9, 2010. Defendants Faun Gomez, James Grimes, Kyle Sharp and Kenneth Robinette were Deputy Sheriffs working in the Downtown Detention Facility that morning. Defendant Carrie Rodriguez was their supervising Sergeant. In this case you have received a great deal of evidence, including videotapes, concerning a series of events involving Mr. Booker and the five individual defendants.

The plaintiff, which is the Estate of Marvin L. Booker, contends that the individual defendants each either participated in the use of excessive force against Mr. Booker or failed to take reasonable steps to protect him from other officers' use of excessive force. The plaintiff contends that the following applications of force were disproportionate to the need for force at the time the applications were used: (1) the application of any physical force, including the takedown itself; (2) the use of a carotid restraint, and even if it was necessary, application of the restraint contrary to the manner in which the officer was trained; (3) putting substantial or significant pressure on Mr. Booker's back while Mr. Booker was in a face-down prone position after he had been subdued and/or incapacitated including by the use of handcuffs; (4)

*Final Instructions Given*
*Brooke Jackson*   10/10/14

the use of the OPN device on Mr. Booker's ankle; and (5) the use of a Taser to control Mr. Booker without having any reason to believe that a lesser amount of force—or a verbal command—could not exact compliance.   The plaintiff claims that the application of force in this case was so excessive as to indicate either malice or a gross abuse of power.  Plaintiff claims that the excessive force, in combination with Mr. Booker's underlying health issues, caused Mr. Booker's death.

In addition to the claim regarding excessive force, the plaintiff contends that defendant Rodriguez has liability for failure to properly perform her role as a supervisor. Plaintiff seeks both compensatory and punitive damages.

The defendants contend that the initial application of force by Deputy Gomez was minimal and was necessitated by Mr. Booker's defiance of her order that he go from the booking desk to an isolation cell.  They contend that the first increase in the level of force occurred after the officers perceived what they believed to be an attempt by Mr. Booker to strike Deputy Gomez, and that the applications of force thereafter were necessary and appropriate responses to Mr. Booker's continuing to resist the deputies' efforts to restrain him. The defendants deny that any application of force was disproportional to the resistance they were dealing with.  The defendants contend that Mr. Booker's resistance to reasonable applications of force, combined with his underlying health issues, caused Mr. Booker's death. The defendants contend that each of them had a reasonable belief that the force that was being applied was necessary, and that none of them had any intent to injure Mr. Booker.  Defendant Rodriguez contends that she supervised the other defendants properly based on the circumstances.  The defendants deny that any damages should be awarded against any of them.

These are the issues that you will decide, based on your application of the facts as you find them to be to the law as I will now instruct you.  The instructions that follow can be

divided into three groups: first, general instructions of the type that apply to nearly every civil case; second, instructions concerning the specific elements of what the plaintiff must prove by a preponderance of the evidence in order to establish that a defendant is liable for a violation of Mr. Booker's Constitutional rights; and third, if you find that any one or more of the defendants has violated Mr. Booker's Constitutional rights, the manner in which you should consider the question of damages.

None of these instructions is more important than any other instruction. They should all be considered as a whole. None of these instructions is to be taken as an indication of my opinion about the facts of the case.  It is your function alone to determine the facts.  In doing so you should not be governed by bias, sympathy or public opinion but only by the facts as you can find them and the law as set forth in these instructions.

**Instruction No. 2**

The Estate of Marvin L. Booker as the plaintiff in this case has the burden of proving all of the required elements of its case by a preponderance of the evidence.  This means that the evidence must be sufficient to convince you that what the plaintiff claims is more likely true than not.  It is not sufficient for the plaintiff to prove that its version of the events "might" be true or even to prove that it is "as likely to be true" as another version. If the plaintiff fails to meet its burden to show that its version of the events is more likely true, your verdict must be for the defendant.

In criminal cases the standard of proof is "beyond a reasonable doubt."  That standard does not apply in this case.

**Instruction No. 3**

The evidence from which you are to decide the facts consists of:

1.      the sworn testimony of the witnesses;

2.      the exhibits which have been received into evidence;

3.      any facts to which the lawyers have agreed or stipulated; and

4.      any other facts you have been instructed to treat as true.

These categories of evidence are sometimes referred to as "direct" evidence. However, while you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of your experience.  In other words, you should use your reason and common sense to make deductions and reach conclusions as to the facts.

Inferences that can reasonably be drawn from the direct evidence are sometimes referred to as "circumstantial" evidence.  The law makes no distinction between the effect of direct and circumstantial evidence.  Any finding of fact you make must be based on probabilities, not possibilities.  Facts may not be based on surmise, speculation or conjecture.

**Instruction No. 4**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  In evaluating the testimony of any witnesses, you may consider:

1.    the opportunity and ability of the witness to see or hear or know the things testified to;

2.    the witness' memory;

3.    the witness' manner while testifying;

4.    the witness'  interest in the outcome  of the case and his or her bias or prejudice;

5.    whether other evidence contradicted the witness' testimony;

6.    the reasonableness of the witness' testimony in light of all the evidence; and

7.    any other factors that bear on believability.

**Instruction No. 5**

If you find the testimony of a single witness is sufficiently convincing so as to establish the existence of a particular fact, you may find that fact to be proven even though a number of witnesses have testified to the contrary.

**Instruction No. 6**

A witness' testimony may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness said or did something inconsistent with the testimony or failed to say or do something which you consider to be inconsistent.  If you believe any witness' testimony has been discredited for any of these reasons, you can give the testimony whatever weight it deserves in light of the circumstances.  If you believe that a witness has testified falsely concerning any material matter, you may distrust such witness' testimony in other particulars, reject it altogether, or give it such weight as you may think it deserves.

**Instruction No. 7**

There are certain things that are **not evidence,** and you may not consider these things in determining facts.

1.      Statements, arguments, questions or objections by the attorneys **are not evidence.** Lawyers have an obligation to make statements and arguments, to ask questions and to object to evidence that they believe is improper under the rules of evidence—in other words, out of bounds. Do not be influenced by any evidentiary objection, my ruling on it or the frequency of objections made by any attorney. If the objection is sustained, you should ignore the answer to the question; if I overrule the objection, treat the answer like any other.

2.      Instructions or admonitions to counsel **are not evidence.** They are imposed to assure that the trial process is proper.

3.      If I tell you to disregard a particular statement, **that statement is not evidence.** You must put that statement out of your mind and not consider it for any purpose. In some instances, you may be instructed that the evidence can be received for a particular purpose only. In that case, you must consider it **only** for the particular purpose specified.

4.      Anything you see or hear outside the courtroom **is not evidence.** You must limit yourself to the evidence presented here in the courtroom.

During the course of the trial, people may enter and leave the courtroom or counsel tables. You should not concern yourself with this—**it is not evidence.**

**Instruction No. 8**

Ordinarily, witnesses must be people who have seen, heard, or otherwise perceived the events at issue.  However, certain witnesses, because of their specialized training, knowledge or experience, are permitted to offer testimony in the form of their opinions about certain matters.

As with any other witness, it is up to you to evaluate these witnesses' testimony based on the instructions the court has previously given you.  In addition, in deciding whether to accept these witness' opinions, you should also consider the witness' training, knowledge, and experience; the facts that the witness relied upon; and the reasons given by the witness for the opinions.

You may believe all, part or none of a witness' opinion testimony, or give that testimony such weight that you feel is appropriate.

**Instruction No. 9**

The last several instructions were what the Court has called "general instructions." The next series of instructions concern the specific elements of what the plaintiff must prove by a preponderance of the evidence in order to establish a violation of Mr. Booker's rights under the Fourteenth Amendment to the Constitution of the United States.

**Instruction No. 10**

In order for the plaintiff to prove its claim of the use of excessive force, the plaintiff must prove, by a preponderance of the evidence, both of the following:

1.  That the defendant participated in the use of "excessive force" as that term is defined in Instruction No. 11; **and**

2.  That the use of excessive force was a cause of Mr. Booker's death.

These elements must be applied separately as to each of the five defendants. As to any of the defendants, if you find that the plaintiff has not established either element number 1 or element number 2 above, then your verdict as to that defendant must be for that defendant. However, if you find as to a particular defendant that the plaintiff has established both elements, then your verdict must be for the plaintiff as to that defendant.

**Instruction No. 11**

In determining whether the plaintiff has proven its claim of excessive force, you should consider three factors.

First, you should consider the relationship between the amount of force used and the need for force that the situation presented. You may consider the conduct of Mr. Booker, such observable things as Mr. Booker's size and his likely age range, and the manner and timing of the various types of force that were applied to him in determining whether the force used was appropriate for the circumstances. You should not, however, consider facts unique to Mr. Booker that were unknown to the officers at the time in deciding whether the amount of force used was proportional to the situation. In short, this first factor is an objective one: did each officer apply force in a manner that a reasonable officer would have applied in the same or similar circumstances.

Second, you should consider the relationship between the amount of force used and the extent of the injury inflicted. You have heard evidence from various medical witnesses as to the cause of Mr. Booker's death. Evidence of the cause of death is one factor that you may consider in determining whether excessive force was used. However, the fact that Mr. Booker died does not necessarily prove that excessive force was used.

Third, you should consider the defendant's subjective intent. If you find that the force used by one or more of the individual defendants was inspired by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience, or by malice rather than mere carelessness, then the subjective intent factor has been satisfied.

## Instruction No. 12

Whether or not you find that a defendant directly participated in the use of excessive force, plaintiff has proved its claim of failure to intervene if you find, by a preponderance of the evidence, that each of the following three elements have been established:

1.   That the defendant failed to take reasonable steps to protect Mr. Booker from another officer's use of excessive force as detailed in Instruction No. 11;

2.   That the defendant's failure to take such steps was inspired by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience, or by malice rather than mere carelessness; **and**

3.   That the defendant's failure to take such steps was a cause of Mr. Booker's death.

These elements must be applied separately as to each of the five defendants.  As to any of the defendants, if you find that the plaintiff has not established all three elements above, then your verdict as to that defendant on the claim of failure to intervene must be for that defendant. However, if you find as to a particular defendant that the plaintiff has established all three elements, then your verdict must be for the plaintiff as to that defendant on plaintiff's claim of failure to intervene.

**Instruction No. 13**

To prove its claim of supervisory liability against defendant Rodriguez, plaintiff must prove, by a preponderance of the evidence, each of the following four elements:

1.      that one or more of the other individual defendants—Deputies Gomez, Grimes, Sharp, and Robinette—violated Mr. Booker's right to freedom from excessive force as detailed in Instruction No. 11; and

2.      that Defendant Rodriguez either directly participated in such constitutional violations or failed to take reasonable steps to prevent the other individual defendants from violating those rights; and

3.      that Defendant Rodriguez's actions were a cause of the series of events that she knew or reasonably should have known would cause others to deprive Mr. Booker of his constitutional rights; and

4.      that in so doing, Defendant  Rodriguez was inspired by malice or by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience.

If you find that all four of these elements have been proven by a preponderance of the evidence, then plaintiff has proved its claim of supervisory liability against Defendant Rodriguez.

But if you do not find that all four of these elements have been proven, then the verdict on the supervisory claim must be against the plaintiff and for Defendant Rodriguez on that claim.

**Instruction No. 14**

The word "cause" as used in these instructions means an act or failure to act that in natural and probable sequence produced the claimed injury. It is a cause without which the claimed injury would not have happened.

If more than one act or failure to act contributed to the claimed injury, then each act or failure to act may have been a cause of the injury. A cause does not have to be the only cause or the last or nearest cause. It is enough if the act or failure to act joins in a natural and probable way with some other act or failure to act to cause some or all of the claimed injury.

**Instruction No. 15**

You have heard evidence of other investigations and reviews of investigations of the July 9, 2010 incident, i.e., investigations or reviews conducted by other agencies. You may consider that evidence, but those investigations and reviews are not binding on you. Your job as jurors is to consider all of the evidence presented during the trial and these instructions of law and to render such verdict as you see fit based upon the evidence and instructions.

**Instruction No. 15(a)**

A violation of a municipal or agency policy, regulation, rule, or practice is not, in and of itself, the equivalent of a violation of constitutional rights. By the same token, compliance with a municipal or agency policy, regulation, rule, or practice, in and of itself, does not mean that there was no violation of constitution rights. Whether Mr. Booker's constitutional rights were violated depends on your application of the law as instructed in these instructions to the facts as you find them to be.

**Instruction No. 16**

The next group of instructions concerns damages.  However, the fact that instructions on damages are being given to you does not mean that the Court is instructing the jury to award or not to award damages.  The question of whether or not damages are to be awarded is a question for the jury's consideration.

## Instruction No. 17

If you find that the plaintiff has proven by a preponderance of the evidence that Marvin Booker's constitutional rights under the Fourteenth Amendment were violated, then you must determine the damages, if any, that were caused by the defendant's violation. To explain the appropriate measure of damages, the Court first must explain the nature of the damages that may be awarded and against whom they may be awarded.

The federal statute that authorizes a lawsuit such as this case is 42 U.S.C. § 1983. This statute creates a cause of action in favor of "the party injured" against every person who, under color of state law, subjects any person to the deprivation of his rights secured by the Constitution of the United States. In this case "the party injured" was Marvin Booker. The persons whom he claims to have violated his Constitutional rights are the defendants in this case.

Because Marvin Booker is deceased, he obviously cannot pursue a cause of action on his own behalf. But the law provides that his cause of action "survives" his death as to certain kinds of damages. A case like this is, therefore, sometimes referred to as a "survival action," and it is brought in the name of the decedent's estate. That is why the plaintiff in this case is the Estate of Marvin L. Booker, and the case was brought on behalf of the Estate by the Personal Representative of the Estate. The Personal Representatives of the Estate were formerly both of Mr. Booker's parents, but because his father passed away, Mr. Booker's mother, Roxey A. Walton, is the Personal Representative who is bringing the case on behalf of the Estate. If any damages are awarded in this case, they will be awarded to the Estate.

Damages may only be awarded against defendants, if any, whom you have found to

have violated Marvin Booker's constitutional rights, whether by participating in the application of excessive force or by failing to intervene, that is, failing to take reasonable steps to protect the victim of another officer's use of excessive force.

The law provides that the following types of damages, if they occurred and were caused by a violation of Mr. Booker's constitutional rights, survive his death and can be recovered by his estate:

1. Funeral and burial expenses.

2. Pain and suffering experienced by Marvin Booker before his death. There is no specific formula for determining the amount, if any, that you may award in this category. If you determine that Mr. Booker did experience physical and/or mental pain and suffering as a result of unconstitutional conduct before he died, you will have to determine a reasonable amount that would compensate him, and therefore his estate, for that pain and suffering.

3. Loss of earnings based upon the probable duration of the victim's life had not the injury occurred. You heard testimony from an economist, William Kemper, regarding the present value of the Supplemental Social Security Income benefits that Mr. Booker would have received if he continued to be eligible for such benefits and lived to the age of 78. The Court has since determined, as a matter of law, that Supplemental Social Security Income benefits do not qualify as "loss of earnings." Accordingly, you must disregard that testimony, and you may not award any damages to the estate for the loss of Supplemental Social Security Income benefits. However, if you find that Mr. Booker would have earned money through employment during the duration of his life,

you may include a damages award for those lost earnings.

4.  The victim's loss of consortium.  Loss of consortium sometimes is thought of as a spouse's loss of the society and companionship of an injured or deceased spouse, but that is not the type of consortium claim in this case.  Rather, as applied here, this means Marvin Booker's loss of the society and companionship of his parents, meaning his father and mother during their respective lifetimes.  In that regard, Mr. Booker's father died in February, 2013, and his mother's current life expectancy under mortality tables as of this date is 9.5 years.  The law does not permit "loss of consortium" damages for the victim's loss of the society and companionship of the victim's siblings or friends. Like category 2, there is no formula for determining a reasonable amount, and the jury must determine a reasonable amount, if any, for this category.

5.  The loss of Mr. Booker's enjoyment of life.  This, too, is difficult to quantify, and any damages that might be awarded in any other category should not be duplicated here. Essentially, this category recognizes that a person's right to enjoy whatever remains of his life has value.

These five categories above are types of "compensatory damages," that is, damages to compensate Mr. Booker and, because he is deceased, to compensate his estate for actual injuries, losses or damages that he might have sustained.  Any damages that you award for "compensatory damages" must be awarded jointly and severally against each defendant who violated Mr. Booker's Constitutional rights.

The City and County of Denver was also named as a defendant in this case, based on a claim that the actions of the individual defendants were the result of the policies, customs or practices of the Denver Sheriff's Department.   However, the City and County of Denver has

since stipulated that the individual defendants were acting according to the customs, policies or practices of the Denver Sheriff's Department, and that the City and County of Denver will be financially responsible to pay any compensatory damages that the jury might award. That is why you will only be considering the liability and damages of the individual defendants.

**Instruction No. 18**

This case involves multiple defendants.  It is not always possible to apportion damages to a particular defendant's conduct.  Plaintiff, however, might be able to prove that more than one defendant is liable for a particular injury.  If two or more defendants united in an act that violated Mr. Booker's rights, all of those defendants are jointly liable for the violation of Mr. Booker's rights.  The law does not require the injured party to establish how much of the particular injury was done by each particular defendant that is shown to be liable.  So if the plaintiff proves that the defendants who are liable acted jointly, then you may treat them jointly for purposes of assessing compensatory damages.  If the plaintiff proves that two or more of the defendants are jointly liable on a particular claim, you may simply determine the overall amount of damages for which they are liable, without breaking that figure down into individual percentages.  Each defendant would then be liable for  the overall compensatory damages.  The plaintiff, however, would be able to recover only once for Mr. Booker's injury, because the law disallows double recoveries.

**Instruction No. 19**

According to U.S. Census Bureau data, the life expectancy in this country of a male person 56 years of age is 21.5 years.

Life expectancy, as shown by this data, is merely an estimate of the probable average remaining length of life of all persons in the United States of a given age and sex. That estimate is based upon a limited record of experience. The inference that may reasonably be drawn from life expectancy as shown by the table applies only to one who has the average health and exposure to danger of people of that age and sex.

In determining the reasonably certain life expectancy of Mr. Booker, you should consider, in addition to what is shown by the mortality table,  all other facts and circumstances in evidence in the case bearing upon the life expectancy of Mr. Booker, including his occupation, habits, past health record and state of health at the time of his death.

**Instruction No. 20**

If you find that a defendant or defendants applied excessive force or failed to intervene, as defined in Instructions No. 11 and 12, then in determining the amount of plaintiff's compensatory damages, if any, you cannot reduce the amount of or refuse to award any such damages because his medical condition might have made him more susceptible to injury or death than an average or normal person.

## Instruction No. 21

The plaintiff also seeks an award of punitive damages. Punitive damages are intended to punish a wrongdoer for extraordinary misconduct and to set an example or warning to others not to engage in such conduct. Punitive damages may be awarded if you find, by a preponderance of the evidence, that a defendant's conduct was motivated by evil motive or intent, or when it involves reckless disregard or callous indifference to the federally protected rights of others.

Punitive damages therefore require an assessment of the defendant's subjective state of mind. You were asked to assess each defendant's state of mind as the third element of the determination whether the defendant improperly applied excessive force or failed to intervene. The state of mind required to award punitive damages is a degree of maliciousness or indifference that exceeds even that which was required for those findings.

You must determine, as to each individual defendant, whether an award of punitive damages has been proven. Any amount of punitive damages must be fixed with calm discretion and sound reason and must never be awarded or fixed in amount by sympathy, bias or prejudice. Whether the City and County of Denver will pay any punitive damage award that may be awarded against any individual defendant is a matter that would be decided after such an award is made based upon a vote of the Denver City Council.

**Instruction No. 22**

Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding an amount. You should use your best judgment based on the evidence.

**Instruction No. 23**

In order to return a verdict, it is necessary that all jurors agree; your verdict must be unanimous.  It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.  You must each evaluate the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinions if you are convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are judges—judges of the facts.  Your role is to seek and determine the truth based on the evidence presented to you.

**Instruction No. 24**

Upon retiring to the jury room, you will select one of your members to act as your foreperson who will preside over your deliberations. Your foreperson will write and sign and questions that you might have for the Court during your deliberations and will be your spokesperson in the courtroom.