IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-00645-RBJ

ESTATE OF MARVIN L. BOOKER,
ROXEY A. WALTON, as Personal Representative,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER;
DEPUTY FAUN GOMEZ, individually and in her official capacity,
DEPUTY JAMES GRIMES, individually and in his official capacity,
DEPUTY KYLE SHARP, individually and in his official capacity,
DEPUTY KENNETH ROBINETTE, individually and in his official capacity, and
SERGEANT CARRIE RODRIGUEZ, individually and in her official capacity;

    Defendants.

## ORDER REGARDING SANCTIONS

This order reduces to writing the Court's ruling on plaintiff's motion for sanctions that was provided to the parties from the bench during the instruction conference.

**Facts**

Shortly before trial, which began on September 22, 2014, plaintiff filed a motion indicating that the City and County of Denver had just produced approximately 2,500 pages of documents including 168 media files. The documents, according to the motion, were responsive to requests for production of documents that were submitted in September 2011 and initially answered by the City in October 2011. Counsel indicated that the last-minute production of this volume of records was putting a huge burden on plaintiff's counsel at the time that they were already working long hours to prepare for trial. ECF No. 257. Plaintiff supplemented the motion the following day with a report that the City had just produced 2,000 more pages of previously withheld documents. Plaintiff asked the Court to sanction this "trial-by-

ambush" tactic by giving the jury an "adverse inference instruction," the theory being that producing documents that plaintiff's small law firm could not hope to digest in the time remaining before trial amounted to intentional spoliation of evidence.

The City responded on the third day of trial. ECF No. 269. The gist of the response was that the documents in question could be divided into two categories: (1) documents concerning complaints about applications of excessive force by the Denver Sheriff's Department other than those involved in the present case; and (2) video files. Regarding the first category, the City indicated that it had consistently maintained that documents concerning unrelated incident were irrelevant to the claims against the individual defendants; but that in response to renewed requests for other-incident documents after the appellate decision in this case came down in March 2014, the City had produced documents concerning one specifically requested incident and a spreadsheet of all allegations of excessive force from June 2011 through April 2014. The City indicated that the plaintiff did not request information referenced in the spreadsheet until July 2014. Thereafter the parties discussed and ultimately, on September 9, 2014, agreed on a stipulation that the individual defendants in this case acted according to the City's customs, policies or practices, such that the City would be liable for any individual liability. Although this stipulation reduced or eliminated the relevance of the documents, the City nevertheless compiled much of the information about the other incidents and produced it, albeit shortly before the trial.

With respect to the video files, the City indicated that in October 2011 the City had informed plaintiff that all preserved video was available for inspection and duplication at the office of the City's counsel. However, plaintiff never asked to inspect or view the footage until September 14, 2014. The City then produced the videos requested. I note that some videos were definitely exchanged well before trial, as they were referenced by the parties, this Court and the Court of Appeals in earlier stages of the case.

Plaintiff filed its reply on September 28, 2014, the fifth day of trial. ECF No. 277. Noting that counsel continued to try to sift through the documents even during trial, plaintiff added that it appeared that they still did not have some of the video footage filmed in the intake area at the time that the incident

occurred. This referred to footage from a camera labeled "1 Outer Open Wait NE." In addition, plaintiff indicated that it had received files for only 35 of 69 cases listed on the other-incident spreadsheet.

**Conclusions**

On September 18, 2014, the same day that plaintiff's motion for sanctions was filed, counsel for the parties participated in a telephone conference with the Court. At that time the Court indicated that because there was no longer a disputed issue concerning municipal liability, but only the claims against the individual defendants, its preliminary view was that evidence concerning allegations of excessive force by other deputies on other occasions was not relevant and would not be admitted unless the defense somehow opened the door to it. The defendant did not open the door to such evidence at trial, and evidence concerning other incidents of alleged excessive force that did not involve any of the defendants in this case was not admitted. It no doubt would have been a disruption and a burden for plaintiff's counsel to review and absorb thousands of pages of information on the eve of (and during) the trial if the information was relevant to the issues being tried. However, it was not relevant, and plaintiff's counsel knew or should have known that at least from the date they entered into the stipulation regarding municipal liability. Therefore, the Court cannot find any substantial prejudice to the plaintiff.

As for videos, the Court has no reason to question the representation that the videos were available for inspection at the offices of defendant's counsel three years ago. Moreover, as I have indicated, video coverage of the incident was available to and relied upon by the parties, this Court and the Court of Appeals in earlier stages of the case. Numerous videos showing the incident from different angles were used by both sides throughout the trial. One must bear in mind that there were only 17 or 18 cameras in the intake area, and that the incident itself lasted only a few minutes. Footage from all but one of those cameras, some of which were very close to the incident and which showed the incident from several angles, was played by both parties during the trial. There was evidence that one camera in the intake area (the 1 Outer Open Wait NE View camera to which plaintiff referred in its reply brief) had a "gap" in coverage during the time when the incident occurred. However, the evidence was that that camera was somewhat remote and only could have picked up a part of the incident; also, several other

cameras in other parts of the relatively new Denver Detention Facility had gaps at one time or another during the night and early morning hours of July 8-9, 2010; and there was no evidence that there was anything nefarious about any of these gaps, including the gap in the one camera in the intake area.

I note as well that plaintiff had videos of Denver Police Department interviews of the five individual defendants and perhaps others, and counsel used those videos at times to impeach trial testimony. I cannot rule out the possibility that there could have been videos in the September 2014 production that could have contained relevant evidence but that the plaintiff's lawyers did not discover before or during the trial. I am inclined to consider such a possibility to be remote in light of all the video coverage of the incident that was shown during the trial. In any event, given the unrefuted representation that all of the videos were made available for inspection approximately three years ago, I cannot find that plaintiff was unfairly prejudiced even if there was something relevant on a video that the plaintiff did not find.

The duty to supplement previous discovery responses continues to and even through trial. This does not excuse a large-scale dump of documents and videos on opposing counsel on the eve of trial, whether opposing counsel's firm is small or large. But the circumstances here do not support the imposition of sanctions on the City and County of Denver or its lawyers, nor certainly the giving of an adverse inference instruction to the jury.

**Order**

The motion and supplemental motion for sanctions [ECF Nos. 257 and 264] are denied.

DATED this day 14th day of October, 2014.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge